**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

TERRI L. THURMAN,          )
        Plaintiff,      )
                        )
v.                       )     2023-CV-_____
                        )
STATE OF KANSAS,        )
        Defendant.    )
_____)

## <u>COMPLAINT</u>

The plaintiff, Terri L. Thurman, states and alleges the following claims for relief against the defendant, the State of Kansas:

## <u>JURISDICTION AND VENUE</u>

1.    This is an employment case based upon and arising under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, et seq.

2.    This court has subject matter jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1331.  The plaintiff's claims were included in a timely administrative charge filed with the Equal Employment Opportunity Commission ("EEOC").  A right-to-sue letter was issued to the plaintiff regarding these claims, and this action was filed within 90 days after receipt of the right-to-sue letter.

3.  All of the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. § 1391(b)-(c).

**PARTIES**

4.      The plaintiff, Terri L. Thurman, is a female who resides in Erie, Kansas.  Ms. Thurman was employed by the State of Kansas, by and through the Office of Judicial Administration ("OJA").  At all times relevant to this lawsuit, Ms. Thurman was employed as the Clerk of the District Court in the 11th Judicial District of Kansas, and she worked at the courthouse in Parsons, Kansas.  Ms. Thurman was employed in this position for over 21 years.

5.      The defendant, the State of Kansas, employs all judges and non-judges in the Kansas court system.   The OJA is the state agency which is responsible for personnel management of all non-judge employees in the Kansas court system.

**FACTUAL ALLEGATIONS**

6.      On August 24, 2017, Fred Johnson was appointed as a District Court Judge in the 11th Judicial District. Under the Kansas Constitution, Judge Johnson is only subject to discipline, suspension, and removal for cause by the Kansas Supreme Court after appropriate hearing.

7.      Tasha Thurman, who is Terri Thurman's daughter, was hired to be Judge Johnson's administrative assistant with the agreement that Tasha would complete the court reporter certification program within one year of her hiring. She did not complete the certification program, and she worked for Judge Johnson from December of 2017 to December of 2018.

8.    Tasha Thurman complained in writing that Judge Johnson had subjected her to multiple hostile acts during 2018, stating in part:

> During 2018, to say I was working in a hostile work environment would be an understatement. While working for … Judge Johnson, my self-confidence and self-worth crumbled. I felt threatened, degraded and belittled. I was constantly walking on eggshells, wondering if the next word out of my mouth was going to set him off or result in an interrogation about what I was doing or where I was on my schooling.
>
>     At some point in April, I started to wonder if he had an anger problem because when he got irritated, his entire face was beet red, his eyes twitched, and he would sneer. I started becoming leery of my surroundings and had an uneasy feeling in my stomach. I wasn't sleeping.

9.    Terri Thurman was aware of Judge Johnson's hostile acts toward Tasha Thurman because Tasha told Terri about the hostile acts on a daily basis. In addition, Terri often observed Tasha in her office crying because of Judge Johnson's hostile acts.

10.    Terri Thurman also complained in writing that Judge Johnson had subjected her to multiple hostile acts during 2019, including a confrontation which occurred at the end of a budget meeting on May 9, 2019. Ms. Thurman described this confrontation in part as follows:

> Judge Johnson said, 'I want to know your retirement date.' I replied, 'I don't have a retirement date.' Judge Johnson continued and said, 'You told Judge Jack and I that you are retiring in July.' I said, 'I can't ….' [H]e cut me off, slammed his hand down on the table, and screaming at me pointing

his finger saying, 'You told us you were retiring at Christmas and I want to know a date.' … Judge Johnson proceeds to tell me I am toxic, you are a problem, you need to go, you are evil, and disrespectful!

… He threw his hands in the air and said, 'I am done with you! Screaming at the top of his voice. I walked out. This entire screaming episode lasted between 5-10 minutes.

11.     Mac Young was present during the confrontation between Ms. Thurman and Judge Johnson on May 9, 2019. Mr. Young is the District court Administrator of the 11th Judicial District. Immediately after the May 9 confrontation, Mr. Young told Ms. Thurman to come to his office in Pittsburg, Kansas, the following day.

12.     After her confrontation with Judge Johnson on May 9, 2019, Ms. Thurman went and sat in her office. She was in shock, crying, shaking, and sick to her stomach.

13.     On May 10, 2019, Ms. Thurman went to Mr. Young's office. Mr. Young questioned her about various topics to which Judge Johnson wanted answers. Mr. Young then told Ms. Thurman that he would handle the situation between her and Judge Johnson. However, Mr. Young failed to take any reasonable remedial action.

14.     Sabrina Overfield also complained in writing that Judge Johnson had subjected her to a hostile work environment, beginning with a confrontation on

January 10, 2020. Ms. Overfield was then employed as a Court Reporter in the 11th Judicial District.

15.     The confrontation between Ms. Overfield and Judge Johnson on January 10, 2020, occurred in Judge Johnson's office, when Ms. Overfield stopped to discuss the three candidates who had been nominated to become the new District Court Judge in the 11th Judicial District. In her written complaint regarding this incident, Ms. Overfield described the confrontation as follows:

> I was ready to conclude our conversation and proceed to the clerk's office when Judge Johnson slams his hand on his desk, and says in a hateful intimidating voice, 'Sit down. We need to have a talk.' I still stood at Judge Johnson's door, as Judge Johnson proceeded to ask me why I would not help him in his courtroom and why I had a problem with Tammy, his court reporter. I told him I didn't have a problem with Tammy and I was very busy in my own courtroom to assist him. (I really wasn't quite sure what timeframe he meant.) Judge Johnson then commented he was just as busy. That is when I said, 'Yes, one thing I suggested we do is go back to criminal dockets on Monday where we do morning and you do afternoons. We are always waiting on attorneys to finished in your courtroom or vice versa,' and Judge Johnson immediately says, 'No, we are not. You do not start court until 10:00 or 10:30 and I start at 9:00.' As I was trying to make another statement about why I thought it was best to go back to the old criminal docket to Judge Johnson, Judge Johnson interrupted me and he said, 'I told you to sit down.' Judge Johnson's tone was very angry and harsh and threatening. Judge Johnson then told me I was lying because I sat right there on his couch with Judge Jack and told him I wouldn't work for him and Tammy has helped Judge Jack several times. I tried to explain myself

and the situation, and that was not what I said, nor Judge Jack, and Judge Johnson proceeding to interrupt me and get very angry with me and slammed his hand again on his desk and said, 'I told you to sit down and talk to me.' I said, 'You cannot talk to me like this.' Judge Johnson responded back, 'Yes, I can.' Judge Johnson proceeded to again to slam his hand on his desk again and yelled, 'I told you to SIT down,' and pointed to his chair in front of his desk. At that time, I was beginning to fear what Judge Johnson may do next, and I exited his office….

16.   Ms. Thurman was aware of the confrontation between Ms. Overfield and Judge Johnson on January 10, 2020, because she overheard Judge Johnson shouting at Ms. Overfield. In addition, after the confrontation, Ms. Overfield came to the district court clerk's office, and told Ms. Thurman about the incident. Ms. Overfield was crying, shaking, and scared. Ms. Thurman helped Ms. Overfield leave the Parsons courthouse.

17.   After assisting Ms. Overfield in leaving the Parsons courthouse, Ms. Thurman immediately called Mr. Young on her cell phone and reported the confrontation between Ms. Overfield and Judge Johnson. Ms. Thurman herself was crying, shaking, and hyperventilating. Mr. Young told Ms. Thurman to send him an incident report.

18.   Ms. Thurman observed Judge Johnson interact with male employees in the workplace, and he always treated male employee with respect. Ms. Thurman never observed Judge Johnson treat any male employee in the same harassing and abusive manner which he treated her, Tasha Thurman, and Ms. Overfield.

6

19.     On January 17, 2020, Ms. Thurman filed a formal complaint against Judge Johnson with the Kansas Commission on Judicial Conduct ("KCJC"). Around this same time, both Tasha Thurman and Ms. Overfield also filed formal complaints against Judge Johnson with the KCJC.

20.     On January 21, 2020, Oliver K. Lynch, who was then the Chief Judge of the 11th Judicial District, issued Administrative Order No. 166. which stated:

> Beginning January 27, 2020, Hon. Fred W. Lynch (DO3) will be sitting in Oswego [Kansas] for office hours and court until further order.

21.     After Judge Lynch had issued his administrative order on January 21, 2020, Judge Johnson took adverse employment actions against Ms. Thurman in retaliation for opposing what she believed to be a hostile work environment. These adverse employment actions by Judge Johnson included the following: refusing to send Ms. Thurman invoices for payment of court purchases; failing to include Ms. Thurman on emails regarding court hearings and court business; failing to include Ms. Thurman in staff meetings; failing to notify Ms. Thurman in regard to jury information; and telling attorneys and court staff that Ms. Thurman was performing poorly in her job.

22.     The adverse employment actions taken by Judge Johnson against Ms. Thurman continued throughout 2020 and 2021. These adverse employment actions substantially interfered with Ms. Thurman's work performance.

23.    On May 4, 2020, the KCJC dismissed the written complaints against Judge Johnson filed by Ms. Thurman, Ms. Overfield, and Tasha Thurman. The KCJC stated:

> After extensive review and discussion, the commission concluded that the complaints contained issues that are personnel matters which should be handled administratively through human resources and did not contain facts establishing reasonable cause to support a finding that the judge's actions violated the judicial code.

24.    On September 9, 2020, Ms. Thurman received her annual performance evaluation from Mr. Young. This performance evaluation contained several false statements, and it have Ms. Thurman an overall rating of "needs improvement." This was the first overall rating of "needs improvement" which Ms. Thurman had ever received as an employee of the 11th Judicial District.

25.    On February 20, 2021, Chief Judge Lynch issued Administrative Order No. 175, which rescinded Administrative Order No. 166. Administrative Order No. 175 stated:

> Beginning March 1, 2021, Administrative Order No. 166 assigning Hon. Fred W. Johnson (DO3) to sit in Oswego is hereby rescinded. At his discretion, Judge Johnson may schedule and hold court in either Oswego or Parsons.

26.    Prior to issuing Administrative Order No. 175, Chief Judge Lynch met with Ms. Thurman and Ms. Overfield, and told them that he intended to rescind Administrative Order No. 166. Chief Judge Lynch explained that he did not have the authority to tell another Judge where he could work. This explanation did not

make sense to Ms. Thurman because Administrative Order No. 166 had been in effect for over one year.

27.    On June 29, 2021, Ms. Thurman and Ms. Overfield met with Judge Lori Bolton Fleming, who had succeeded Judge lynch as the Chief Judge of the 11th Judicial District. Ms. Thurman and Ms. Overfield discussed with Chief Judge Fleming their working conditions, and the hostility which they were still experiencing from Judge Johnson.

28.    On July 1, 2021, Chief Judge Fleming sent an email to Ms. Thurman and Ms. Overfield as a follow-up to their meeting on June 29. This email stated in relevant part:

> It is my understanding that you both feel the work location schedule established by former Chief Judge Lynch is appropriate <u>as long as it is followed</u>. For the time being, we will continue to use the prior work schedule established by Chief Judge Lynch. That should result in neither of you working in the same location as Judge Johnson. I have communicated this to Judge Johnson and also asked that if his schedule changes, to please have Myra [his Administrative Assistant] notify you via email about the change in schedule so that contact can be avoided…. If for some reason communication does not occur, or a last minute change happens, and you find yourself in the same location as Judge Johnson during a work day, you are free to work at home that day or move to the alternative location. Please notify me if this occurs.

29.    On August 20, 2021, Ms. Thurman sent an email to Chief Judge Fleming regarding an issue which Ms. Thurman had discussed with Mr. Young. This email stated in relevant part:

> [The issue] pertains to the follow-up email you sent that indicated you spoke to Judge Johnson and advised him that I was to receive Judge Johnson's daily dockets, plus if there were going to be any changes to his work location each Tuesday and Wednesday. To date, I have never received any communication from Judge Johnson nor Myra …. I fell I am intentionally left out of all communications and I continue to work in a hostile work environment as before.

30.     Even after Ms. Thurman sent her email to Chief Judge Fleming on August 20, 2021, Ms. Thurman never received any communication from Judge Johnson or his Administrative Assistant regarding his daily dockets, or any changes to his work location. This refusal to communicate by Judge Johnson substantially interfered with Ms. Thurman's work performance.

31.     On November 19, 2021, Ms. Thurman received an email from Mr. Young, containing demands from Judge Johnson regarding certain duties which he wanted performed by the District Court Clerk's Office. Ms. Thurman believed that Judge Johnson's demands were unreasonable in light of her staff and limited resources. Accordingly, she scheduled a meeting with Ms. Young to discuss the matter.

32.     On November 30, 2021, Ms. Thurman met with Mr. Young to discuss Judge Johnson's demands regarding the duties which he wanted performed by the District Court Clerk's Office. Ms. Thurman explained why she believed that Judge Johnson's demands were not reasonable in light of her staff and limited resources.

However, Mr. Young did not seriously consider her explanation, and he ordered her to make the changes.

33.    Ms. Thurman believed that her working conditions were now so difficult that she had no choice but to resign and retire from her employment as District Court Clerk. Consequently, on November 30, 2021, she submitted her letter of resignation to Mr. Young, effective December 31, 2021.

## COUNT I: HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII

34.    The above paragraphs are incorporated herein by reference.

35.    During her employment with the State of Kansas, Ms. Thurman was subjected to a hostile work environment, based on her sex or gender. This hostile work environment consisted of: (a) Judge Johnson's threatening, demeaning, and abusive conduct toward Ms. Thurman herself; (b) Judge Johnson's threatening, demeaning, and abusive conduct toward other women in the workplace, specifically Tasha Thurman and Sabrina Overfield; and (c) retaliatory conduct toward Ms. Thurman by Judge Johnson, Mr. Young, and Chief Judge Lynch.

36.    The discriminatory intimidation, ridicule, and insult to which Ms. Thurman was subjected was sufficiently severe or pervasive to alter the conditions of her employment, and create an abusive work environment. This abusive work environment violated Title VII.

37.    As a result of the abusive work environment to which she was subjected, Ms. Thurman has suffered damages in the form of emotional distress,

mental anguish, loss of enjoyment of life, humiliation, and anger. Ms. Thurman has also suffered damages in the form of economic loss.

WHEREFORE, Ms. Thurman prays for judgment against the State of Kansas for damages in excess of $75,000.00, plus attorney fees, prejudgment interest, and litigation costs.

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII

38.    The above paragraphs are incorporated herein by reference.

39.    Ms. Thurman engaged in protected activities under Title VII by opposing what she in good faith believed to be sex discrimination in the form of a hostile work environment. These protected activities included; (a) lodging informal complaints of a hostile work environment; and (b) filing a formal complaint with the KCJC, alleging misconduct by Judge Johnson.

40.    The State of Kansas, in violation of Title VII, retaliated against Ms. Thurman for engaging in protected services. These retaliatory acts included; (a) Judge Johnson's failure to communicate with Ms. Thurman and his exclusion of her from meetings; (b) Chief Judge Lynch's rescission on February 10, 2021, of his earlier administrative order, which assigned Judge Johnson exclusively to the Oswego courthouse; and (c) Mr. Young's annual performance evaluation of Ms. Thurman, which was lower than her previous evaluations.

41.    As a result of the retaliation to which she was subjected, Ms. Thurman has suffered damages in the form of emotional distress, mental anguish, loss of

enjoyment of life, humiliation, and anger. Ms. Thurman has also suffered damages in the form of economic loss.

WHEREFORE, Ms. Thurman prays for judgment against the State of Kansas for damages in excess of $75,000.00, plus attorney fees, prejudgment interest and litigation costs.

## COUNT III: CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII

42.    The above paragraphs are incorporated herein by reference.

43.    Ms. Thurman was constructively discharged from her employment as the District Court Clerk because she reasonably believed that her working conditions were so difficult that she had no choice but to resign and retire from her employment.

44.    Ms. Thurman's sex or gender was a motivating factor in her constructive discharge.

45.    As a result of her constructive discharge, Ms. Thurman has suffered damages in the form of emotional distress, mental anguish, loss of enjoyment of life, humiliation, and anger. Ms. Thurman has also suffered damages in the form of economic loss.

WHEREFORE, Ms. Thurman prays for judgment against the State of Kansas for damages in excess of $75,000.00, plus attorney fees, prejudgment interest, and litigation costs.

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

## DESIGNATION OF PLACE OF TRIAL

The plaintiff requests that Topeka, Kansas, be designated as the place of trial in the above-captioned matter.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
    McENTIRE & JARBOE, L.L.C.

BY:   s/Alan V. Johnson          
      Alan V. Johnson, KS #9992
      ajohnson@sloanlawfirm.com
      534 South Kansas Avenue, Suite 1000
      Topeka, Kansas 66603-3456
      785-357-6311
      785-357-0152 facsimile
      Attorneys for Plaintiffs