IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TERRI L. THURMAN,

          Plaintiff,

v.                                     Case No.  23-4044-JWB

STATE OF KANSAS,

          Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment.  (Doc. 27.) The motion is fully briefed and ripe for decision.  (Docs.  27, 30, 33.)  The motion is GRANTED for the reasons stated herein.

## I.    Facts[1]

Plaintiff worked as a trial and district court clerk at the Labette County courthouse in Kansas' Eleventh Judicial District from October of 1993 through her retirement in December of 2021.  (Doc. 26 at 2.)  In 2017, Judge Fred W. Johnson was appointed to the Eleventh Judicial District and assigned to Labette County.  (*Id.* at 3.)  Plaintiff's supervisor was Mac Young, the district court administrator.  (*Id.* at 2.)

In May of 2019, Plaintiff, Young, Judge Johnson, and a second district court judge met to discuss the district court's annual budget.  (Young Dep., Doc. 27-4 at 13:1–15.)  After the meeting, Judge Johnson confronted Plaintiff about when she would retire.  (Pl. Dep., Doc. 27-1 at 49:17–50:22.)  Judge Johnson yelled at Plaintiff and would not let her speak.  (*Id.* at 120:15–121:5.)  He

---

[1] The following facts are either stipulated to in the Pre-Trial Order (Doc. 26) or uncontroverted and deemed admitted.

ended the conversation by throwing his hands in the air and telling Plaintiff that he was through with her and that she needed to go. (*Id.*)

Prior to this incident, Judge Johnson had never raised his voice to Plaintiff. (*Id.* at 119:8–15.) Judge Johnson never raised his voice to Plaintiff thereafter. (*Id.* at 78:22–79:1.) Judge Johnson did not reference Plaintiff's gender during the incident. (*Id.* at 59:21–60:4.)

The day after the May 2019 incident, Young spoke with Plaintiff in his office about the altercation between her and Judge Johnson. (*Id.* at 56:1–6.) Plaintiff's gender was not referenced during this meeting either. (*Id.* at 59:25–60:4.)

There were two additional occasions when Plaintiff felt uncomfortable with Judge Johnson's behavior. The first was when he failed to introduce Plaintiff to a jury while she was training a new hire on bailiff duties,[2] (*Id.* at 60:15–63:20), and the second was when he corrected her for beginning to administer an incorrect oath to a jury.[3] (Id. at 64:7–65:9.)

A court reporter, Sabrina Overfield, also experienced a heated exchange with Judge Johnson. (*See* Doc. 27-8 at 1.) It occurred in January of 2020.[4] (Doc. 27-10 at 7.) Overfield filed a complaint against Judge Johnson and Young. She listed Plaintiff as a witness. (*See* Doc. 27-8 at 1.)

When Allyson Christman, an investigator with the Office of Judicial Administration ("OJA"), contacted Plaintiff about Overfield's complaint on January 17, 2020, Plaintiff complained to her about the May 2019 exchange between her and Judge Johnson. (Doc. 27-8 at 1.) Christman directed Plaintiff to file an official complaint against Judge Johnson with the Kansas

---

[2] Plaintiff does not provide a date for this incident. However, she testified that it occurred after the May 2019 altercation. (Thurman Dep., Doc. 27-1 at 60:20–21.)

[3] Again, Plaintiff does not provide an exact date for this incident. However, she testified that it happened about two weeks after the May 2019 dispute. (*See id.* at 64:1–16.)

[4] Parties do not disagree that the altercation between Judge Johnson and Overfield occurred in January 2020. For the date of the altercation, the parties cite Overfield's federal case against the State of Kansas. However, the court found the date of the altercation in the filings of this case.

Commission on Judicial Conduct ("KCJC").  (*Id.*)  On January 21, 2020, Plaintiff filed a formal

complaint against Judge Johnson.  (Pl. Dep., Doc. 27-1 at 83:2.)  Plaintiff asserted therein that she

and Overfield worked in a hostile work environment, and that Overfield was the fourth person who

had endured Judge Johnson's mistreatment.  (Doc. 27-10 at 8.)  One of the four individuals was

Plaintiff's daughter, Tasha Thurman.  (*See id.* at 8, 9; *see* Pl. Exhibit Index, Doc. 42 at 10, Overfield

v. State of Kansas (No. 21-4093).)  Plaintiff also complained of the May 2019 incident but did not

include the two other instances when she believed Judge Johnson wronged her.  (*Id.* at 4.)

However, the KCJC concluded that Judge Johnson did not violate the judicial code. (Doc. 27-10

at 15.)  Upon a request for reconsideration, the KCJC affirmed its findings and conclusion.  (Doc.

27-9 at 6.)

During Plaintiff's conversation with Christman, she also lodged a personal complaint

against Young.  (*See* Doc. 27-8 at 1.)  She complained that Young did not intervene during the

May 19th incident nor sufficiently deescalate the tension between her and Judge Johnson.  (*See id.*

at 2.)

While the KCJC conducted its investigation, the then chief judge of the Eleventh Judicial

District, Judge Lynch, met with Plaintiff on March 5, 2020. (Pl. Dep., Doc. 27-1 at 148:4–6.)

Plaintiff was given the option of working in a different building than Judge Johnson.  (*Id.* at 158:2–

159:25.)  Judge Lynch and Young wanted Plaintiff to feel comfortable where she worked and took

her complaint seriously.  (*Id.* at 149:9–13.)  During a second meeting with Plaintiff, after the KCJC

concluded that there was no violation of the judicial code, Judge Lynch again offered Plaintiff the

option of working in a different location than Judge Johnson, or even working remotely.  (*Id.* at

152:13–153:6.)  After this discussion, Plaintiff had the liberty to work where she wanted but had

to inform Young where she would be working on a given day.  (*See id.* at 154:1–10.)

Plaintiff alleges that her day-to-day work environment changed for the worse after she filed the complaint against Judge Johnson. She returned to the office from vacation on January 27, 2020. (Doc. 27-3 at 1–2). According to Plaintiff, upon her return she found her subordinates were distant from and cold towards her.[5] (*Id.*) Because of the changed environment, Plaintiff testified in her deposition that she struggled to go to work and was angry with her coworkers. (Pl. Dep., Doc. 27-1 at 107:8–19.) In September of 2020, Plaintiff also received an annual review wherein Young identified two areas she needed to improve: (1) disciplining employees, and (2) coaching employees to improve their performance. (Doc. 27-20 at 1–2.) Then in January 2021, Judge Johnson began hosting Zoom meetings with Plaintiff, Young, Judge Stockard, Sabrina Overfield, Myra Freemann, and the deputy clerks. (*See* Doc. 27-4 at 1–3.) Plaintiff testified that Judge Johnson directed all questions to her and that her staff members did not contribute to the conversation. (Pl. Dep., Doc.27-1 at 231:3–232:4, 233:1–18.) According to Plaintiff, Judge Johnson's decision to organize and participate in these meetings as well as his questioning of Plaintiff during them inhibited her abilities to interact with the deputy clerks. (*See id.* at 233:1–18.) The meetings stopped when Plaintiff complained about them. (*See id.* at 234:2–14.) Plaintiff and Overfield were also not receiving Judge Johnson's weekly docket calendar. (*See* Pl. Dep., Doc. 27-1 at 161:1–163:24.) They both met with the new chief judge of the Eleventh Judicial District, Judge Fleming, to discuss that problem and the other issues they were having with Judge Johnson. (Doc. 27-16 at 1.) Shortly after the meeting, Plaintiff started to receive Judge Johnson's weekly docket. (Pl. Dep., Doc. 27-1 at 162:21–163:2.) Lastly, Judge Johnson requested a full-

---

[5] Defendant objects to the admissibility of Plaintiff's factual assertion that Judge Johnson announced that Plaintiff filed a formal complaint against him to the deputy clerks. (Doc. 33 ¶ 107.) The basis for the objection is hearsay. (*See id.*) Plaintiff was not present when Judge Johnson allegedly made the announcement. (Doc. 27-1, Thurman Dep. at 83:11–22.) She purportedly learned of the announcement from two coworkers. (*See id.*) The court acknowledges that Plaintiff is relying on two out-of-court statements. She has not properly supported the alleged statements by her co-workers with affidavits or other admissible evidence. Thus, the court will not consider Plaintiff's factual assertion that Judge Johnson announced she filed a complaint against him.

time trial court clerk. (Pl. Dep., Doc. 30-4 at 204:13–23.)   Plaintiff did not believe this would be

feasible, as her office could not afford to lose a trial court clerk. (Pl. Dep., Doc. 27 at 207:5–23.)

There was an attempt to organize a meeting with the Chief Judge Fleming to discuss Judge

Johnson's request.[6] (Doc. 27-3 at 11.)  However, Judge Fleming directed Plaintiff back to Young.

(*See id.*)  When she did so, Plaintiff expressed her frustration and submitted her resignation. (*See*

*id.*)

## II.    Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a).  A fact is "material" when it is essential to the claim, and the issues of fact are

"genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's

favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006).  The court views all

evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise*

*Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In considering a motion for summary judgment, the facts set forth in the motion must refer

"with particularity to those portions of the record upon which" the moving party relies. D. Kan.

R. 56.1(a).  "All material facts set forth in the statement of the movant will be deemed admitted

for the purpose of summary judgment unless specifically controverted by the statement of the

opposing party." *Id.*  To properly dispute a proposed statement of material fact, the opposing party

---

[6] The parties disagree over the identity of this meeting's organizer.  Plaintiff asserts that she was the organizer and emailed Judge Fleming. (Doc. 27-3 at 11.)  By contrast, relying on Mac Young's affidavit (Doc. 33-1) that is attached to Defendant's reply brief (Doc. 33), Defendant asserts that Overfield attempted to organize the meeting.  (Doc. 33 ¶ 117.)  Plaintiff has filed a motion to strike Mac Young's affidavit (Doc. 33-1).  In Young's affidavit, he asserts that Overfield attempted to organize the meeting—not Plaintiff.  (Doc. 33-1 at 1.) However, there is no dispute regarding Judge Fleming's decision to direct Plaintiff and Overfield to Young and have him address their concerns.  Hence, this dispute does not involve a material fact.  Instead, the undisputed material fact is that Judge Fleming did not accept an invitation to meet with Plaintiff and Overfield, which lead to Plaintiff's resignation.

must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1).  Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted.  *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) (finding that the "district court was correct to admit all facts asserted in Blue Cross's summary judgment motion that are not controverted by a readily identifiable portion of the record.") (internal quotation and citation omitted).

III.    **Analysis**

Plaintiff asserts three Title VII claims: (1) hostile work environment, (2) retaliation, and (3) constructive discharge.  The court addresses each claim in turn.

A.  **Hostile Work Environment**

Title VII prohibits a hostile or abusive work environment predicated on a person's sex.  *See Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005).  To prevail, a plaintiff needs to establish that severe and pervasive harassment because of her sex created a hostile environment that altered a term, condition, or privilege of their employment.  *See id.*; *see Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). To show that the harassment was based on sex, a plaintiff can direct the court to (1) "facially sex based" or (2) "facially sex-neutral" conduct or incidents.  *See Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (citation omitted for first quote).  If a plaintiff relies on facially sex-neutral conduct, it must be contextualized with other "overtly gender-discriminatory conduct." *Throupe*, 988 F.3d at 1251 (citation omitted).  The Tenth Circuit is clear, however, that district courts should not mechanically approach Title VII claims. Instead, when determining if the harassment occurred because of a plaintiff's sex, courts should analyze the evidence under the totality of the circumstances.  *See Harsco Corp.*, 475 F.3d at 1186.  After review, the court finds that Plaintiff's hostile work environment claim fails for two

reasons: (1) the conduct does not amount to severe and pervasive harassment, and (2) Judge Johnson's conduct directed toward Plaintiff was not based on sex.  The court will summarize and then address the parties' arguments in turn.

First, a claim for hostile work environment must establish that the harassment was sufficiently severe and pervasive to alter a plaintiff's terms and conditions of employment.  *See Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1227 (10th Cir. 2022).  Plaintiff asserts that the following conduct constitutes pervasive and severe harassment: (1) Judge Johnson yelled, pointed his finger, and hit his hands on the desk while speaking with Plaintiff on May 19; (2) Judge Johnson convened three to five Zoom meetings, during which he directed questions toward Plaintiff and the meetings interfered with her duties; (3) she did not receive Judge Johnson's weekly docket calendar; (4) she faced retaliation for reporting Judge Johnson's conduct to the KCJC from co-workers and Judge Johnson; (5) in spring of  2021, Young retaliated against Plaintiff for filing a complaint with the OJA against him by (a) not advertising the open deputy clerk's position in the local paper, and (b) failing to promptly fill the position; and (6) Judge Johnson's alleged misconduct directed at Sabrina Overfield and her daughter Tasha Thurman.  (Doc. 30 at 24–27.)

The court notes that many of Plaintiff's assertions appear to be common workplace problems.  Meetings take up time.  They interfere and disrupt work.  To the extent that Plaintiff complains of Judge Johnson's targeted questioning during his Zoom meetings, the court notes that she was the district court clerk and managed the deputy clerks.  Hence, it was reasonable for Judge Johnson to ask Plaintiff questions as she would be familiar with the deputy clerks' issues.  These were also meetings convened by Judge Johnson, so he could conduct them as he saw fit.  The hiring processes can also be slow and unpredictable under normal circumstances.  Plaintiff complains of advertising and hiring for the deputy clerk position in 2021—during the COVID-19

pandemic.  Additionally, Young's decision to advertise the position on an online platform is not

harassment.  (Pl. Dep., Doc. 27-1 at 212:14–24.)  Young was Plaintiff's supervisor and could

utilize the job-posting media he believed would yield the best results.  Moreover, advertising on

an online platform is a common practice in our digital age because it can reach a wider audience.

And regarding Judge Johnson's docket calendar, there appears to be no nefarious reason for why

Plaintiff did not receive it.  In fact, the record indicates she never attempted to gain direct access

to the calendar or asked the employee who prepared it to send it to her.  (*See id.* at 163:3–23.)

Judge Johnson's conduct is also not sufficiently pervasive or severe.  Plaintiff relies on a

*single* altercation between her and Judge Johnson during which he yelled, pointed his finger, and

hit his hands on the desk while speaking with her.[7]  Regarding Judge Johnson's treatment of two

other women: one was Plaintiff's daughter, Tasha Thurman.  Plaintiff's factual assertion about

Judge Johnson's alleged mistreatment of Tasha is conclusory.  She fails to provide examples of

misconduct and relies exclusively on what appears to be Tasha's statement that Judge Johnson

made her feel degraded and belittled.  (*See* Doc. 30 ¶ 103) (citing Pl. Exhibit Index, Doc. 42 at 10,

Overfield v. State of Kansas (No. 21-4093)).[8]  The other woman was Sabrina Overfield.  She also

sued the state of Kansas alleging two violations of Title VII; one of which was a hostile work

environment claim. *See Overfield v. Kansas*, 660 F. Supp. 3d 1101, 1109 (D. Kan. 2023), *aff'd*,

No. 23-3057, 2024 WL 1611473 (10th Cir. Apr. 15, 2024).  Like Plaintiff, Overfield's evidence

consisted of sporadic instances when Judge Johnson yelled at or was upset with court staff.  *See*

---

[7] Plaintiff does not support her argument on this issue with any reference to the two other incidents when (1) Judge Johnson forgot to introduce her to a jury, and (2) stopped her from giving the incorrect oath.
[8] Plaintiff provides the court with a quote from her daughter's KCJC complaint.  She does not identify specific instances of misconduct in the facts asserted.  Plaintiff's motion fails to provide this court with sufficient context to evaluate Judge Johnson's conduct.  Nevertheless, when the court reviewed the exhibit Plaintiff cited, it discovered where Tasha Thurman listed the specific instances when she believed Judge Johnson mistreated her.  Like Plaintiff, Tasha complains of isolated instances when Judge Johnson yelled at her and slammed office doors.  (*See* Pl. Exhibit Index, Doc. 42 at 13, Overfield v. State of Kansas (No. 21-4093).)  Thus, Judge Johnson's conduct toward Tasha Thurman, although likely rude, was not of sufficient severity and pervasiveness to give rise to a Title VII claim.

*id.* at 1112.  Indeed, she even relied on Plaintiff's May 19 altercation with Judge Johnson.  *See id.*

Viewing the evidence in a light most favorable to Overfield, this court concluded that a reasonable

employee would not consider Judge Johnson's conduct severe or pervasive.  *Id.*  The court reaches

the same conclusion here.  The court does not condone Judge Johnson's yelling and acting angrily

toward his court staff.  However, his conduct, if anything, amounts to "[a] few isolated incidents"

that are "the run-of-the mill boorish, juvenile, or annoying behavior that is not uncommon in

American workplaces [and that] is not the stuff of a Title VII hostile work environment claim."

Throupe, 988 F.3d at 1252 (internal quotations and citations omitted).

Lastly, Plaintiff's argument that Judge Johnson engaged in retaliatory conduct is

unpersuasive.  She alleges Judge Johnson retaliated against her for filing a formal complaint with

the KCJC by announcing to the deputy clerks that she had submitted a complaint.  Plaintiff asserts

that two coworkers informed her of Judge Johnson's announcement.  She did not properly support

that assertion with admissible evidence. Nonetheless, had Plaintiff properly supported the

coworkers' statements, the court would still find Judge Johnson's announcement uncouth but not

pernicious. After all, although one would appreciate and expect Judge Johnson as a courtesy

toward Plaintiff to maintain a level of secrecy about the complaint, the court is unaware of a legal

obligation preventing him from making such an announcement.

Second, even if the court determined that there was a dispute of material fact as to whether

the alleged harassment was severe and pervasive, Plaintiff has not established that Judge Johnson's

treatment occurred because of her sex.

Defendant argues that Plaintiff cannot establish she was harassed because of her sex.  (Doc.

27 at 17.)  It argues that she failed to allege any facially sex-based conduct.  (*See id.* at 17–18.)

9

Hence, according to Defendant, Plaintiff's allegations amount to "poor workplace conduct" unactionable under Title VII. (*See id.* at 18.)

By contrast, Plaintiff argues that she can establish Judge Johnson's alleged misconduct occurred because of her sex. (Doc. 30 at 22.)  Relying on *Harsco Corporation*, Plaintiff argues that Judge Johnson engaged in sex-based discriminatory conduct because he treated male and female court staff differently. (*See id.* at 17–18, 23) (citing 475 F.3d at 1186) (explaining that a plaintiff may demonstrate that harassment was based on sex through evidence that men and women were treated differently)).  She argues that she experienced disadvantageous conditions and terms of employment relative to her male coworkers.  Plaintiff's evidence is that Judge Johnson did not yell, slam his hands on the desk while speaking, or interact angrily with two male employees. (*See id.* at 22.)  Differential treatment is Plaintiff's only argument that she was subjected to a hostile environment *on the basis of her sex*.

Although her reliance on *Harsco Corporation* for that standard is not misplaced, she fails to address the Tenth Circuit's statement later on in that case regarding how district courts must evaluate Title VII claims under the totality of the circumstances.  *See* 475 F.3d at 1186.  Moreover, the Tenth Circuit requires that if a plaintiff relies on sex-neutral evidence, it needs to be contextualized with overtly sex-based harassment. *Throupe*, 988 F.3d at 1251.  This requirement relates back to the nature of Title VII; namely, that it is *not* a general civility code.

Here, there is no overtly sex-based harassment to contextualize Plaintiff's hostile work environment claim.  Her allegations amount to boorish workplace misconduct.  The first incident is when Judge Johnson confronted Plaintiff about when she would retire.  During this altercation, Judge Johnson yelled at her and he threw his hands in the air. (Pl. Dep., Doc. 27-1 at 49:17-50:1– 22; 120:15–121:5.)  He did not reference her sex.  There were two other incidents: (1) Judge

Johnson did not introduce Plaintiff to a jury when she was training a new hire, (*id.* at 60:15–63:20), and (2) he corrected her when she began to administer the incorrect oath. (*Id.* at 64:7–65:9.) If these last two incidents can even be considered harassment, they were not facially or overtly sex-based because Judge Johnson never referenced or alluded to Plaintiff's sex. Hence, these three incidents were sex neutral.

Plaintiff also relies on Judge Johnson's treatment of Overfield as evidence that he created a hostile work environment *on the basis of sex*. (Doc. 30 at 22.) However, this court concluded that Overfield failed to establish Judge Johnson engaged in sex-based misconduct. *See Overfield*, 660 F. Supp. 3d at 1111.

Plaintiff also attempts to introduce overtly sex-discriminatory misconduct through the testimony of two male employees: Mac Young and Shaun Higgins. Young testified that Judge Johnson never yelled at him, spoke angrily toward him, waved his finger at him, or made demeaning remarks to him. (Doc. 30-2 at 3–4.) Higgins also testified that Judge Johnson did not yell or scream at him, speak angrily towards him, slam his hands down on a desk when speaking with him, or point a finger at him in a threatening manner. (Doc. 30-3 at 3–4.) However, Plaintiff's evidence on Young and Higgin's treatment remains evidence of sex-neutral conduct.

For example, the court in *Russell v. Wormuth* identified five instances of differential treatment between men and women that were facially-sex based discriminatory conduct:

> (1) conducted separate meetings for males and females; (2) assigned separate readings based on gender; (3) commented on the absence of female supervisors; (4) permitted spontaneous meetings with female employees but required male employees to make an appointment; and (5) attempted to designate a female as acting Chief while [the plaintiff] went on maternity leave.

No. 22-4035-DDC, 2024 WL 4707958, at *18 (D. Kan. Nov. 7, 2024). These five incidents involve an organized effort to facially and overtly treat men and women differently in the context

of formal workplace activities and decisions: meetings, assignments, and in the filling of positions and roles.  In other words, the differential treatment identified in *Russell* appears planned and intentional.  By contrast, Plaintiff argues that she was treated differently than male employees because Judge Johnson raised his voice, pointed his finger, and hit his hands on the desk when speaking with her.  Plaintiff's alleged differences arose not in organized workplace policies and events, but in Judge Johnson mannerisms and tone of voice during conversations.  She does not allege Judge Johnson treated male and female court staff differently in any organized or official capacity. As a result, Plaintiff's evidence is sex neutral.  She fails to contextualize the alleged sex-neutral harassment with facially sex-based harassment.  Thus, Plaintiff fails to demonstrate that the alleged harassment was based on her sex.

As alleged, Plaintiff's hostile work environment claim is simply untenable.  She failed to demonstrate that the alleged harassment was anything more than standard workplace problems: not receiving filings, failing to promptly hire a deputy clerk, convening meetings, etc. Additionally, the conduct she complains of was not sex-based.  Therefore, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

### B.    Retaliation

Plaintiff's Title VII retaliation claim is based upon "retaliatory harassment."[9]  (Doc. 37 at 27–28.)  Under this form of retaliation claim, the adverse employment action is the harassment. *See Adcox v. Brennan*, No. 15-CV-9258-JWL, 2017 WL 2405326, at *6 (D. Kan. June 2, 2017). The *McDonnell Douglas* burden-shifting framework is used to analyze retaliatory harassment claims. *See id.* at *7.  Under the *McDonnell Douglas* framework, Plaintiff needs to show "(1) she engaged in protected opposition to discrimination; (2) that a reasonable employee would have

---

[9] Defendant does not dispute Plaintiff's claims as unviable under Tenth Circuit law.

found the challenged action materially adverse; and (3) that a causal connection existed between the protected activity and the materially adverse action." *See id.* (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211–12 (10th Cir. 2008). Harassment is a materially adverse employment action when it is intended to punish a plaintiff for engaging in protected activity. *See id.* at *6 (citing Tenth Circuit cases wherein the court suggested that retaliatory harassment could become an adverse employment action.)    Additionally, harassment constitutes a materially adverse employment action only if it is "sufficiently severe or pervasive that it could well dissuade a reasonable worker from engaging in protected activity." *Id.* at *7.

Defendant first argues that Plaintiff failed to engage in protected opposition to sex discrimination. (Doc. 27 at 28.) Plaintiff disagrees, arguing that she engaged in two instances of protected opposition: (1) she filed a complaint against Judge Johnson with the KCJC (Doc. 27-10), and (2) she filed a complaint with the OJA against Young.[10] (*See* Doc. 30 at 29.)

For a complaint to qualify as protected opposition against discrimination, it must communicate to the employer that it has engaged in unlawful conduct under Title VII. *See Kincaid v. Unified Sch. Dist. No. 500*, 645 F. Supp. 3d 1134, 1155 (D. Kan. 2022), *aff'd*, 94 F.4th 936 (10th Cir. 2024) (citing *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008)). The court concludes that Plaintiff engaged in protected opposition when she filed her formal complaint against Judge Johnson with the KCJC. It contains references and examples of a hostile work environment directed towards women.[11] (*See e.g.*, Doc. 27-10 at 6–10.)

Next, Plaintiff must demonstrate that a reasonable employee would have found the harassment after she engaged in protected activity materially adverse such that its severity and

---

[10] Plaintiff does not direct the court to the actual complaint. Instead she cites to an OJA report which references her complaint against Young. (Doc. 27-8 at 1.)
[11] Because the court concludes that Plaintiff's formal complaint to the KCJC qualifies as protected opposition, it does not address whether her complaint against Young filed with the OJA qualifies as protected opposition.

pervasiveness would dissuade a reasonable worker from engaging in protected activity. *See Adcox*, 2017 WL 2405326, at *7. Plaintiff relies on the following adverse actions: (1) Judge Johnson announced that Plaintiff had filed a complaint against him; (2) Judge Johnson's Zoom meetings with the deputy clerks and Plaintiff; (3) Plaintiff did not receive Judge Johnson's weekly docket; (4) Young did not advertise the vacancy for the deputy clerk position in the local newspaper; and (5) Young failed to fill the deputy clerk's position promptly. (Doc. 30 at 29–30.)

As discussed in Section III.A, Plaintiff's alleged harassment is neither pervasive nor severe. Zoom meetings are standard business practices. Judge Johnson allegedly directed his questions to Plaintiff, but she supervises the deputy clerks and Judge Johnson organized the meetings. Hence, he conducted them as he saw fit.[12] Plaintiff also complains of not receiving Judge Johnson's weekly trial dockets. However, the record indicates that there was no pernicious reason for this. Plaintiff never requested access to his calendar or contacted the individual who disseminated it. (*See id.* at 163:3–23.) As for Plaintiff's complaints against Young, the court already explained that the deputy clerkship position opened in 2021, during the COVID-19 pandemic. Coordinating hiring procedures and finalizing employment decisions was tough before the pandemic, and for some positions, remains so presently. Thus, the court appreciates that Defendant faced difficulties with attracting talent and making hiring decisions during a tumultuous period. In sum, Plaintiff complains of routine problems that plague organizations and disrupt day-to-day business operations.

The court again notes that Plaintiff failed to properly support her factual claim that Judge Johnson announced she had filed a complaint against him. Nevertheless, even if she had—as

---

[12] When Plaintiff complained about the meetings, Judge Johnson stopped having them. (Doc. 27-1, Thurman dep. at 234:2–14.)

already discussed—the court would not find Judge Johnson's announcement as a pernicious act in violation of Title VII. Rather, the court would view it merely as uncouth and boorish.

Because Plaintiff's allegations of harassment are neither sufficiently severe nor pervasive to dissuade a person from filing a complaint, she has failed to establish a prima facie case of retaliatory harassment. Therefore, Defendant is granted summary judgment on her claim of retaliation.

### C.    Constructive Discharge

Plaintiff's third claim is that she was constructively discharged because she was no longer protected from Judge Johnson and Young's retaliation. (Doc. 30 at 33.) Plaintiff must demonstrate that Judge Johnson and Young engaged in unlawful conduct that made her working conditions unbearable and forced her to resign. *See Neri v. Bsd. of Educ.*, 860 F. App'x 556, 567 (10th Cir. 2021). Again, Plaintiff relies on five alleged retaliatory acts: (1) Judge Johnson announced that Plaintiff had filed a complaint against him; (2) Judge Johnson's Zoom meetings with the deputy clerks and Plaintiff; (3) Plaintiff did not receive Judge Johnson's weekly docket; (4) Young did not advertise the vacancy for the deputy clerk position in the local newspaper; and (5) Young's failure to fill the deputy clerk's position promptly. (Doc. 30 at 29–30.) As already discussed, these allegations do not amount to unlawful retaliatory conduct under Title VII. (*See* Section III.B.)

The subjective frustrations of disgruntled employees do not give rise to Title VII claims. If they did, federal courts would be inundated by Title VII lawsuits. Plaintiff has not shown she suffered from unlawful conduct that forced her to resign. Thus, Defendant is awarded summary judgment for Plaintiff's constructive discharge claim.

15

## IV.    Conclusion

THEREFORE, Defendant's motion for summary judgment is GRANTED.   Plaintiff's motion to strike Mac Young's affidavit (Doc. 34) is DENIED AS MOOT.  The court did not rely on the affidavit, and the court's summary judgment rulings fully resolve the lawsuit.

IT IS SO ORDERED.  Dated this 19th day of March, 2025.

s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

16